## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
### CENTRAL ISLIP

| | |
|---|---|
| LACHAE VICKERS, individually and on behalf of all others similarly situated, | 2:24-cv-01261 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| CROOK & MARKER LLC, | |
| Defendant | Jury Trial Demanded |

Plaintiff Lachae Vickers ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

## I.    TEQUILA AND MARGARITAS

1.    The source of tequila is the blue agave plant, a succulent with large leaves and pointy tips, native to regions of the Americas.[1]

 

2.    Standards for tequila production were established by the Norma Oficial

---

[1] A succulent plant is one that retains water in its leaves in dry climates.

Mexicana ("NOM"), and adopted by the United States, requiring that it contain not less than 51% blue agave sugars, prior to fermentation.[2]

3.     Though all tequila is required to meet this minimum standard, higher quality versions are made from only blue agave sugars.

4.     These "specification[s] ensure[] a consistent flavor profile…[because] [T]he sugars extracted from the heart (piña) of the blue agave," along with "the aging process," "gives tequila its distinct taste and characteristics."[3]

5.     While "Versatility is tequila's hallmark," it is best known as part of a margarita, defined by Merriam-Webster as "a cocktail consisting of tequila, lime or lemon juice, and an orange-flavored liqueur."[4]

6.     Wikipedia defines a "margarita" as "a cocktail consisting of tequila, orange liqueur, and lime juice[.]"

7.     The International Bartenders Association ("IBA") recognizes a "margarita" as a classic cocktail made with tequila.

8.     Though "A margarita bears a resemblance to a daiquiri in its balance of

---

[2] NOM-006-SCFI-2005, Alcoholic Beverages – Tequila – Specifications; 27 C.F.R. § 5.148(b)(1).

[3] Suavecito Tequila, Authentic Mexican Tequila: Discovering the Differences That Matter, Sept. 7, 2023; Olmeca Altos, Aging Tequila; Cupcakes and Cutlery, Best Tequila for Margaritas.

[4] Kathy A. McDonald Celebrity Tequila Brands and the Spirit's Versatility Make a Compelling Combination, Variety, Feb. 6, 2020.

sweet and sour, [] it's the unique tequila flavor," described as "earthy-yet-sweet," "that distinguishes it."[5]

9.  A margarita aficionado remarked, "Who can deny the bright, tenacious flavor of tequila with freshly squeezed lime juice, a hit of orange liqueur for sweetness, and a salt rim to balance the flavors?"[6]

10.  Since "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate" whether alcoholic beverages they buy are, or contain distilled spirits, the Federal Alcohol Administration Act ("FAAA") required truthful disclosure to the public.[7] 27 U.S.C. § 201 *et seq*., e.g., 27 U.S.C. § 205(e) ("Labeling") (declaring it "unlawful" to package and label "any distilled spirits, wine, or malt beverages" in a manner which misleads consumers, "irrespective of falsity," with respect to, *inter alia*, "the[ir] identity and quality."); Title 27, Code of Federal Regulations ("C.F.R."), Parts 1 to 39, Tax and Trade

---

[5]https://www.ohlq.com/ohlq-hub/news-and-lifestyle/spirit-spotlight/difference-between-anejo-and-reposado-tequila

[6] https://savoringtoday.com/classic-margarita/

[7] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

Bureau ("TTB").

11.   New York adopted these laws through its Alcoholic Beverage Control ("ABC") Law. ABC § 107-a; 9 NYCRR § 25.1 *et seq.*[8]

## II.   LABELING IS MISLEADING BECAUSE PRODUCT NOT A MARGARITA

12.   To appeal to the 60% of Americans who identify a margarita as their cocktail of choice, Crook and Marker LLC ("Defendant") sells ready-to-drink ("RTD") beverages represented as a "Margarita" in a "Classic Lime" variety, directly above "Flavor Made With Tequila," adjacent to a salt-rimmed coated cocktail glass with a lime slice, next to a can with a large drawing of what appears to be the agave plant.



---

[8] New York Codes, Rules and Regulations ("NYCRR"), Title 9, Executive Department, Subtitle B, Division of Alcoholic Beverage Control, Chapter I - Rules of The State Liquor Authority, Parts 25 to 106; 9 NYCRR § 84.1(a) (adopting TTB labeling regulations).

## III.  LABELING IS MISLEADING

13.  Despite the emphasis on tequila and margaritas, what buyers receive is not a margarita, indicated by the statement of composition, "Lime & Tequila Flavored Brewed Cocktail With Other Natural Flavors." 27 C.F.R. § 7.147(b).



14.  That the Product does not contain tequila, at least in a form expected by consumers, is confirmed by the fine print on the bottom of the package's ingredient list, identifying "organic brewed alcohol" instead of "tequila."[9]



---

[9] INGREDIENTS: Purified water, organic alcohol, organic natural flavors, less than 1% of: organic lime juice concentrate, organic stevia leaf extract, citric acid, sodium citrate, sea salt.

15.   First, the labeling is misleading because, as "Mandatory information," the Product's statement of composition "[is not] readily legible to potential consumers under ordinary conditions," because its small size and inconspicuous placement means most will not notice it. 27 C.F.R. § 7.147(b); 27 C.F.R. § 7.52(a).

16.   Second, even if consumers notice the statement of composition, they will not understand it, because "Brewed Cocktail" does not "clearly identify the base class and/or type designation of th[is] malt beverage product [] *e.g.*, 'beer'…or 'malt beverage.'" 27 C.F.R. § 7.147(b)(1).

17.   "Brewed Cocktail" is a misleading and confusing term because brewing refers to alcoholic beverages made through fermentation while a cocktail is based on distilled spirits.

18.   Third, while the statement of composition is required to "Identify added flavoring material(s)," "Tequila Flavored Brewed Cocktail" "draws particular attention to the apparent use of distilled spirits in [this] malt beverage [which] leads consumers to believe the product is made with or contains distilled spirits." 27 C.F.R. § 7.147(b)(2).

19.   However, distilled spirits used to manufacture flavors lose their class and type identity, such as rum or tequila, when blended with other ingredients to make a flavor extract.

20.   Fourth, the front label statement, "Flavor Made With Tequila," causes

consumers to expect tequila to be an independent ingredient, especially because it is central to what defines a margarita.

21. Fifth, the proximity of "Classic Lime" to "Flavor Made With Tequila" results in purchasers reading this as two discrete statements, "Classic Lime Flavor" and "Made With Tequila."

22. That this reading is reasonable is because seldom if ever will consumers encounter labeling which highlights the components of flavoring substances, in foods, non-alcoholic beverages and especially alcoholic beverages.

23. Sixth, since the relevant regulations prohibit misleading statements or representations, "irrespective of falsity," the use of tequila in the Product's "natural flavors" ingredient does not render the tequila and margarita representations non-misleading, because they cause consumers to expect a canned margarita. 27 C.F.R. § 7.122(b)(1).

24. Seventh, the Product's labeling "contain[s] [] statement[s], design[s], [and] representation[s] that tend[] to create a false or misleading impression that [it] contains distilled spirits or is a distilled spirits product." 27 C.F.R. § 7.128(a).

25. These include "Margarita" in a "Classic Lime" variety, directly above "Flavor Made With Tequila," adjacent to a salt-rimmed coated cocktail glass with a lime slice, next to a can with a large drawing of what appears to be the agave plant.

26. Though the use of the cocktail name of "margarita" is not, by itself,

7

misleading, "the overall labeling [] present[s] a misleading impression about the identity of the [P]roduct," based on the cocktail glass with a rim covered in salt, picture of the agave plant and statement, "Flavor Made With Tequila." 27 C.F.R. § 7.128(b)(3).

27.   Eighth, though the bottom of the label states, "Organic Supergrain Alcohol," this statement does not exclude the use of the distilled spirit of tequila, nor is it likely consumers would understand what it is referring to.

28.   Canned margaritas which contain the distilled spirit of tequila are sold by competitor brands like BuzzBox and Dulce Vida and are not technologically or commercially unfeasible.



## IV.   CONCLUSION

29.   The labeling of "Margarita" in a "Classic Lime" variety, directly above "Flavor Made With Tequila," adjacent to a salt-rimmed coated cocktail glass with a

lime slice, next to a can with a large drawing of what appears to be the agave plant, suggests and tells consumers they are buying a canned version of a margarita, defined by its presence of tequila, in a non-de minimis amount, in absolute and/or relative terms.

30.   Instead, consumers get an alcoholic beverage without tequila, as they reasonably understand this distilled spirit, had it been added as an independent ingredient, as opposed to as part of flavoring materials, replaced with an alcohol base produced through fermentation and brewing.

31.   Alcohol produced through fermentation and brewing costs less than alcohol produced through distillation, like tequila.

32.   Alcohol produced through fermentation and brewing lacks the unique taste produced through distillation, like tequila.

33.   By adding alcohol produced through fermentation and brewing, consumers get a smaller to negligible amount of tequila than what is promised and implied from the label, notwithstanding its use as part of flavoring material results in a substance bearing little resemblance to this distilled spirit, when added separately, among other reasons.

34.   As a result of the false and misleading representations and omissions identified here, the Product is sold at a premium price, at or around $18.99 for eight 11.5 oz cans, excluding tax and sales, higher than similar products, represented in a

non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.[10]

## JURISDICTION

35.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

36.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

37.   Plaintiff is a citizen of New York.

38.   The membership of Crook & Marker LLC consists of Chimborazo Inc. ("Chimborazo").

39.   Chimborazo is a citizen of Delaware based on its corporate formation.

40.   Chimborazo is a citizen of New Jersey based on its principal place of business.

41.   Defendant is a citizen of Delaware and New Jersey based on the citizenship of Chimborazo.

42.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

---

[10] Other misrepresentations and omissions relate to the failure to disclose the presence of an artificial sweetener and health-related statements about "supergrains." 27 C.F.R. § 7.147(b)(4); 27 C.F.R. § 7.129.

43.    The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores and/or online in this State and online to citizens of this State.

44.    The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York from grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores and/or online in this State and online to citizens of this State.

45.    Defendant transacts business in New York, through the sale of the Product to citizens of New York from grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores and/or online in this State and online to citizens of this State.

46.    Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

47.    Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, by

regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

48.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

49.   Venue is in this District with assignment to Central Islip Division because a substantial or the entire part of the events or omissions giving rise to these claims occurred in Suffolk County, which is where Plaintiff's causes of action accrued.

50.   Plaintiff purchased, used and/or consumed the Product in reliance on the labeling and packaging identified here in Suffolk County.

51.   Plaintiff first became aware the labeling and packaging was false and misleading in Suffolk County.

52.   Plaintiff resides in Suffolk County.

## PARTIES

53.   Plaintiff Lachae Vickers is a citizen of Suffolk County, New York.

54.   Defendant Crook & Marker LLC is a Delaware limited liability company.

55.   Defendant produces, markets, labels and distributes alcoholic beverages.

56.   Plaintiff is like most consumers who prefers alcoholic beverages based on distilled spirits over those made through fermentation and/or brewing, due to reasons including superior quality and taste.

57.   Plaintiff is one of the 60% percent of Americans for whom the margarita is their favorite alcoholic beverage.

58.   Plaintiff is like all consumers and the public who associate a margarita with tequila and expect this distilled spirit to be the central part of any alcoholic beverage described as a margarita.

59.   Plaintiff is like all consumers who look to the front label of products they buy to see what they are buying and to learn basic information.

60.   Plaintiff is like all consumers and is accustomed to the front label of packaging telling them if what they are buying contains an appreciable amount, in relative and absolute terms, of the highlighted ingredients.

61.   Plaintiff is like all consumers and when they see a front label telling them that a product or any part of a product, is "made with" specific ingredients, they will expect it contains more than a de minimis or negligible amount of such ingredients

instead of other lower quality and lesser valued substitutes for such highlighted ingredients.

62. Plaintiff expected that the Product, labeled as a "Margarita" in a "Classic Lime" variety, directly above "Flavor Made With Tequila," adjacent to a salt-rimmed coated cocktail glass with a lime slice, next to a can with a large drawing of what appears to be the agave plant, was the product generally known and understood as a margarita, based on the presence of tequila, in a non-de minimis amount in absolute and/or relative terms.

63. Plaintiff expected the Product's primary alcohol ingredient would be the distilled spirit of tequila, present as an independent and distinct ingredient, sufficient to provide the attributes of tequila, instead of as part of any flavoring ingredient.

64. Plaintiff was not aware that malt beverages could contain flavorings, separate from their alcohol base, which contain distilled spirits, notwithstanding that their incorporation into such flavorings changes their essential character such that they are unable to impart their attributes to the product they are added to.

65. Plaintiff read, saw and relied on the statements of "Margarita," in a "Classic Lime" variety, directly above "Flavor Made With Tequila," adjacent to a salt-rimmed coated cocktail glass with a lime slice, next to a can with a large drawing of what appears to be the agave plant.

66. Plaintiff did not expect the Product's predominant alcohol source to be

based on fermentation and brewing compared to distillation.

67.   Plaintiff purchased the Product between January 2021 and January 2024, at grocery stores, wine stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores and/or online, in Suffolk County, and/or other areas.

68.   Plaintiff bought the Product at or around the above-referenced price.

69.   Plaintiff paid more for the Product than she would have had she known (1) it was not a margarita, (2) its predominant alcohol source was based on fermentation and brewing compared to distillation, and (3) the amount of any tequila was de minimis or negligible, in absolute and relative terms, added as part of a flavoring ingredient, as she would not have bought it or would have paid less.

70.   The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

71.   Plaintiff seeks to represent the following class:

> All persons in New York who purchased the Product in New York during the statutes of limitations for each cause of action alleged.

72.   Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the

foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

73. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

74. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

75. Plaintiff is an adequate representative because her interests do not conflict with other members.

76. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

77. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

78. The class is sufficiently numerous and likely includes several thousand people.

79. This is because Defendant sells the Product to consumers through hundreds of third-party retailers and online in the State Plaintiff is seeking to represent.

80.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
New York General Business Law ("GBL") §§ 349 and 350

81.   Plaintiff incorporates by reference paragraphs 1-34.

82.   The purpose of the GBL is to protect consumers against unfair and deceptive practices.

83.   The GBL considers false advertising and deceptive practices in the conduct of any trade or commerce to be unlawful.

84.   Violations of the GBL can be based on the principles of the Federal Trade Commission Act ("FTC Act") and FTC decisions with respect to those principles. 15 U.S.C. § 45 *et seq.*

85.   In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

86.   Defendant's false and deceptive representations and omissions with respect to the Product's predominant alcohol source, that it was based on distillation and contained the distilled spirit of tequila, in a non-de minimis amount, independently added, as opposed to based on fermentation and brewing, are material

in that they are likely to influence consumer purchasing decisions.

87.   This is because consumers expect alcoholic beverages, especially those named after cocktails, to be based on distilled spirits instead of fermentation and brewing.

88.   The Product's labeling and packaging violated the FTC Act and thereby violated the GBL because it expressly states it is a "Margarita" in a "Classic Lime" variety, when this is false and/or misleading.

89.   The Product's labeling and packaging violated the FTC Act and thereby violated the GBL because it impliedly suggests it is a "Margarita" because (1) "Classic Lime" is a standard variety of a margarita, (2) "Classic Lime" is directly above "Flavor Made With Tequila," such that purchasers will expect it has a "Classic Lime Flavor," and that the Product is "Made With Tequila," (3) the flavor of real tequila is essential to a margarita, (4) a margarita is served in manner depicted on the front label, in that type of cocktail glass, with its rim coated in salt, accompanied by a lime slice, and (5) the can pictured on the front label contains a large drawing of an agave plant, the source crop for the distilled spirit of tequila, when these statements and images and/or their implications are false and/or misleading.

90.   The labeling and packaging of the Product violated the FTC Act and thereby violated the GBL because the statements of "Margarita," in a "Classic Lime" variety, directly above "Flavor Made With Tequila," adjacent to a salt-rimmed

coated cocktail glass with a lime slice, next to a can with a large drawing of what appears to be the agave plant, created the erroneous impression its predominant alcohol source was based on distillation and was the distilled spirit of tequila, in a non-de minimis amount, independently added, as opposed to based on fermentation and brewing, and that any tequila was added as part of flavoring materials.

91.    Violations of the GBL can be based on public policy, established through statutes, law or regulations.

92.    The labeling of the Product violates laws, statutes, rules and regulations that are intended to protect the public.

93.    The labeling of the Product violated the GBL because the representations and omissions are misleading, "irrespective of falsity."

94.    The labeling of the Product violated the GBL because the representations and omissions of "Margarita," in a "Classic Lime" variety, directly above "Flavor Made With Tequila," adjacent to a salt-rimmed coated cocktail glass with a lime slice, next to a can with a large drawing of what appears to be the agave plant, when (1) its predominant alcohol source was based on fermentation and brewing, instead of distillation, and (2) the distilled spirit of tequila was present in a de minimis amount, added not independently but as part of a flavoring ingredient, was contrary to the ABC's directive, to "prohibit deception of the consumer;  [and] to afford him or her adequate information as to quality and identity," which adopted the FAAA

and accompanying regulations, the purpose of which was to prevent consumer deception. ABC § 107-a(1); 27 U.S.C. § 205(e).

95. The FAAA and its regulations prohibit consumer deception by companies in the labeling of alcoholic beverages.

96. These include the following federal and state laws and regulations, described above.

| Federal | State |
|---|---|
| 27 U.S.C. § 205(e) | ABC § 107-a |
| 27 C.F.R. § 7.122 | |
| 27 C.F.R. § 7.128 | 9 NYCRR § 84.1 |
| 27 C.F.R. § 7.147 | |
| 27.C.F.R. § 7.52 | |

97. Plaintiff believed the Product (1) was a margarita, defined by the presence of tequila and the flavor of tequila and (2) contained tequila as the predominant alcohol ingredient, in a non-de minimis amount, in absolute and relative terms, added as a separate ingredient as opposed to being part of any added flavoring, even though (a) its alcohol was based predominantly on fermentation and brewing of grains or other substances, not distillation and (b) the amount of tequila was de minimis or negligible because it was included as part of the added flavoring material, not independently, thereby losing its character and ability to impact the product attributes.

98.   Plaintiff seeks to recover for economic injury and/or loss she sustained based on the misleading labeling and packaging of the Product, a deceptive practice under the GBL.

99.   Plaintiff will produce evidence showing how she and consumers paid more than they would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

100. As a result of Defendant's misrepresentations and omissions, Plaintiff was injured and suffered damages by her payment of a price premium for the Product, which is the difference between what she paid based on its labeling and marketing, and how much it would have been sold for without the misleading representations and omissions identified here.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Awarding monetary damages and interest;

3.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4.  Other and further relief as the Court deems just and proper.

Dated:   February 19, 2024

Respectfully submitted,

/s/  Spencer Sheehan

Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

Spencer Sheehan

Sheehan & Associates P.C.

Chung, James
James Chung Law P.C.
4322 216th St
Bayside NY 11361
(718) 461-8808

jchung_77@msn.com

*Counsel for Plaintiff*

**Certificate of Service**

I certify that on February 19, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|                          | CM/ECF | First-Class Mail | Email | Fax |
|--------------------------|--------|------------------|-------|-----|
| Defendant's Counsel      | ☐      | ☐                | ☐     | ☐   |
| Plaintiff's Counsel      | ☐      | ☐                | ☐     | ☐   |
| Courtesy Copy to Court   | ☐      | ☐                | ☐     | ☐   |

/s/ Spencer Sheehan